ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| OLGA EVELYN OTERO SANTANA<br><br>Parte Recurrida<br><br>v.<br><br>CORPORACIÓN A, ASEGURADORA X, FULANA DE TAL, W TACOS, BURGERS, WINGS, SPORTS & ROCK CANTINA, CORPORACION B, ERIC ACOSTA, MENGANA DE TAL, SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ERIC A, ASEGURADORA Y, **MUNICIPIO DE SAN JUAN**, **ÓPTIMA SEGUROS**, JUAN DEL PUEBLO, ASEGURADORA Z, **BERMÚDEZ INVESTMENT CORPORATION**<br><br>Parte Peticionaria | KLCE202400259 consolidado con KLCE202400264 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2021CV01489<br><br>Sala: 806<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Compareció ante este Tribunal la parte peticionaria, el Municipio de San Juan (en adelante, "MSJ") y Óptima Seguros/ QBE Seguros (en adelante, "Óptima"), mediante un recurso de *certiorari* presentado el 1 de marzo de 2024, bajo el alfanumérico KLCE202400259, y Bermúdez Investment Corporation (en adelante, "Bermúdez Investment") (en conjunto, los "Peticionarios") por vía de otro recurso de *certiorari* presentado el 4 de marzo de 2024, caso núm. KLCE202400264. Nos solicitaron la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior

de San Juan (en adelante, el "TPI"), el 2 de enero de 2024. Mediante el referido dictamen, el TPI declaró "No Ha Lugar" una solicitud de sentencia sumaria que presentaron los Peticionarios. Ante la realidad de que los Peticionarios impugnan el mismo dictamen, el 5 de marzo de 2024, ordenamos la consolidación de los recursos de *certiorari* ante nos, bajo los siguientes alfanuméricos: KLCE202400259 y KLCE202400264.

Por los fundamentos que expondremos a continuación, *expedimos* los recursos de *certiorari, modificamos* el dictamen recurrido y así modificado, *confirmamos*.

**I.**

El presente caso se remonta al 6 de marzo de 2021, fecha en que la Sra. Olga Evelyn Otero Santana (en adelante, "Otero Santana" o la "Recurrida") presentó una "**Demanda**" sobre daños y perjuicios, luego de una alegada caída que sufrió en una rampa en contra del Sr. Tomas Bermúdez, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, W Tacos, Burgers, Wings, Sport & Rock Cantina (en adelante, "W Tacos"), el Sr. Eric Acosta Rodríguez junto a su esposa y la Sociedad Legal de Gananciales compuesta por ambos, MSJ, Óptima y varios codemandados de identidad desconocida.

A través de su escrito alegó que el 7 de marzo de 2020 comió en el restaurante W Tacos con su primo y que alrededor de las 3:00 a.m., se dirigió a un área provista por dicho establecimiento para fumar un cigarrillo. Añadió que el área de fumar se encontraba frente al edificio, al finalizar una rampa que ocupaba parte de la acera municipal. Sostuvo que mientras descendía por la inclinada pendiente de la rampa, resbaló en su superficie mojada, perdió el equilibrio y sufrió una estrepitosa caída. Alegó que la ausencia de pasamanos le impidió sujetarse para evitar la caída y que, dado a que no podía caminar por los dolores que experimentaba en su tobillo izquierdo, su primo la levantó, la llevó a su vehículo y la trasladó a su hogar.

Asimismo, expresó que la caída le provocó una fractura trimaleolar en su tobillo izquierdo y que, como consecuencia, tuvo que someterse a una intervención quirúrgica y a extensos tratamientos médicos. También indicó

que fue diagnosticada con el Síndrome de Dolor Complejo Regional (en adelante, "CRPS"), el cual le genera notables restricciones en la movilidad de su tobillo, pierna y pie izquierdo. Sumado a eso, expresó que experimenta inflamaciones y variaciones en la temperatura y color del tobillo. Enunció que, a raíz de la caída, le resulta difícil caminar, por lo que depende de una silla de ruedas para desplazarse. Añadió que cierta cicatriz hiperpigmentada en su tobillo izquierdo afecta su estética personal. Por último, señaló que los daños físicos junto a los dolores crónicos le han ocasionado estrés postraumático, el cual requiere atención psiquiátrica.

En vista de lo anterior, la señora Otero Santana sostuvo que los Peticionarios fueron negligentes al construir o encargar la construcción de una rampa sobre una acera municipal y que la caída fue el resultado de la falta de cuidado, iluminación y de un pasamanos en dicha rampa. De igual manera, esbozó que el MSJ debió haber advertido sobre la construcción de una rampa peligrosa. Así pues, solicitó el pago de sumas no menores a $700,000.00 por los daños físicos y $300,000.00 por las angustias mentales. Más adelante, el 7 de junio de 2021 presentó una "**Segunda Demanda Enmendada**" para incluir como parte demandada a Bermúdez Investment, como dueña del edificio en cuya primera planta opera el negocio W Tacos.

Así las cosas, el 9 de agosto de 2021, Bermúdez Investment presentó su "**Contestación a la Demanda**" mediante la cual negó las alegaciones expuestas en su contra, especificando que no construyó la rampa ni ordenó su construcción y que no tenía control sobre ésta. A su vez, negó que haya habido poca iluminación el día de los alegados hechos, así como la presencia de goteras o filtraciones en la zona. De esta manera, arguyó que no es responsable por los daños y perjuicios alegados por la Recurrida.

Luego de varios trámites procesales, el 7 de agosto de 2023, los Peticionarios presentaron la "**Moción en Solicitud de Sentencia Sumaria al amparo de la Regla 36.3 de Procedimiento Civil**" (en adelante, "Moción en Solicitud de Sentencia Sumaria") mediante la cual alegaron que no existe controversia de hechos que impida la disposición del caso por la vía sumaria. Señalaron que la Recurrida carece de evidencia que demuestre

que la presunta caída ocurrió como consecuencia de un acto negligente de su parte. Asimismo, manifestaron que del descubrimiento de prueba se desprende que la causa próxima a la caída no fue la existencia de la rampa, sino el hecho de que la señora Otero Santana había consumido alcohol y perdió el balance al saludar a otra persona. En esencia, los Peticionarios argumentaron que procedía dictar sentencia sumaria a su favor ya que: (1) la Recurrida no recuerda los pormenores de la alegada caída, (2) no tiene evidencia sobre la peligrosidad en la que basa su reclamo, (3) carece de prueba adicional aparte de su testimonio y (4) la señora Otero Santana admitió que la caída ocurrió cuando vestía unos zapatos tipo plataforma y cuando una amiga la saludó perdió el balance. Ante ello, solicitaron la desestimación de la "**Demanda**" y la imposición de costas y honorarios de abogado por la suma de una cantidad no menor a $10,000.00.

Posteriormente, el 30 de agosto de 2023, la Recurrida presentó la "**Réplica a Moción en Solicitud de Sentencia Sumaria al amparo de la Regla 36.3 de Procedimiento Civil**" (en adelante, "Oposición") mediante la cual reiteró sus alegaciones expuestas en la "**Demanda**". Igualmente, argumentó que, a diferencia de lo afirmado por los Peticionarios, su caída fue ocasionada por la mencionada rampa, la cual, según los informes periciales y sus declaraciones en su deposición, carecía de pasamanos y se encontraba en estado de abandono. Así, afirmó que la relación causal entre su caída y las lesiones sufridas se deriva de la prueba y las opiniones médicas proporcionadas por los peritos de ambas partes. Agregó que, dado que el MSJ es el propietario de la acera y la tiene bajo su responsabilidad, supervisión y control es responsable por los daños causados. Asimismo, expresó que Bermúdez Investment y W Tacos también responden por los daños sufridos por servirse de la aludida rampa. Así, la señora Otero Santana manifestó que, en contraposición a las aseveraciones de los Peticionarios, existen cuestiones fácticas en disputa que requieren ser dirimidas en un juicio, por lo que no es adecuado disponer del caso sumariamente.

Así las cosas, el 26 de septiembre de 2023, los Peticionarios presentaron su "**Réplica a Oposición a Moción de Sentencia Sumaria**" en la que reafirmaron la falta de evidencia suficiente para respaldar la reclamación de daños y perjuicios. Adujeron que la *Oposición* presentada por la Recurrida no cumplió con los requisitos formales establecidos por la Regla 36 de Procedimiento Civil, *infra*, ya que los hechos alegados carecían de la indicación de párrafos o páginas de declaraciones juradas u otra prueba admisible como evidencia que respalde dichas afirmaciones. Además, hicieron hincapié en que la prueba adjunta se componía de fotografías sin identificación, tomadas un año después del incidente en cuestión, lo que las hace irrelevantes o inapropiadas para los objetivos de la *Oposición.* Por último, alegaron que las transcripciones de las declaraciones y los informes no respaldan las afirmaciones de la Recurrida, al igual que no se especificaron las páginas y párrafos de donde se derivan sus premisas.

Más adelante, el 10 de octubre de 2023, la Recurrida presentó la "**Dúplica a Oposición a Moción de Sentencia Sumaria al amparo de la Regla 36.3 de Procedimiento Civil**". En resumen, la señora Otero Santana enfatizó la existencia de controversias sobre hechos materiales que impiden la resolución del caso a través de un procedimiento sumario. En detalle, argumentó que existe controversia en cuanto a si resbaló debido al presunto limo en la rampa y si ésta contaba con pasamanos en la fecha de la alegada caída. Aseveró que su *Oposición* cumplió con los requisitos procesales al reconocer los hechos esenciales que no están en controversia a la vez que presentó prueba testifical y documental para respaldar los hechos materiales que sí lo están. También indicó que cierta declaración de rebeldía del señor Acosta Rodríguez llevó consigo la consecuencia de que se consideraran aceptadas todas y cada una de las materias que alegó en la "**Demanda**".

Tras varios trámites procesales, el 2 de enero de 2024, el foro primario emitió una *Resolución* mediante la cual declaró "No Ha Lugar" la *Moción en Solicitud de Sentencia Sumaria* por considerar que existía

controversia sobre los siguientes hechos: (1) la inclinación de la rampa frente a W Tacos, (2) la falta de mantenimiento de la rampa, (3) la pérdida del balance al saludar a una tercera persona; (4) el alegado incumplimiento de la rampa con los códigos de construcción de Puerto Rico y el "Department of Justice Accesibility Guidelines" o (5) si a la fecha del accidente, la rampa frente a W Tacos estaba desprovista de pasamanos. Insatisfechos con esta determinación, el 17 de enero de 2024, los Peticionarios presentaron dos mociones intituladas "**Moción de Reconsideración y Determinaciones de Hechos Adicionales**". Finalmente, el 2 de febrero de 2024, el TPI emitió una nueva *Resolución* mediante la cual declaró "No Ha Lugar" las referidas mociones.

Inconformes con lo anteriormente resuelto, el 1 de marzo de 2024 MSJ y Óptima acudieron ante este Tribunal mediante recurso de *certiorari*, bajo el alfanumérico KLCE202400259, en el que señalaron los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMAR[I]A POR INSUFICIENCIA DE PRUEBA DE LAS COMPARECIENTES, PUES LA DEMANDANTE ADMITIÓ LA CAUSA DE LA CAÍDA EN LA QUE SE BASA SU DEMANDA, Y ESTA NO PUEDE SER ATRIBUIDA A LAS COMPARECIENTES; ADEMÁS POR LA DEMANDANTE NO CONTAR CON LA PRUEBA SUFICIENTE PARA SOSTENER NINGUNA DE SUS ALEGACIONES DE NEGLIGENCIA CONTRA LAS COMPARECIENTES.**
>
> **SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONSIDERAR COMO CONTROVERSIAS HECHOS QUE NO CONSTITUYEN TAL COSA.**
>
> **TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A INCLUIR DETERMINACIONES DE HECHOS SOBRE LOS QUE NO EXISTE GENUINA CONTROVERSIA.**

Posteriormente, el 4 de marzo de 2024, Bermúdez Investment presentó el recurso de *certiorari* ante nos, bajó el alfanumérico KLCE202400264, mediante el cual le imputó al foro primario la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE SENTENCIA SUMAR[I]A POR INSUFICIENCIA DE PRUEBA DE LAS PARTES CODEMANDADAS, LA PARTE DEMANDANTE ADMITIÓ**

**QUE LA CAUSA PR[Ó]XIMA DE LA CAÍDA EN LA QUE SE BASA SU DEMANDA NO PUEDE SER ATRIBUIDA A LA PARTE COMPARECIENTE; ADEMÁS LA PARTE DEMANDANTE NO TIENE PRUEBA ALGUNA PARA SOSTENER NINGUNA DE SUS ALEGACIONES DE NEGLIGENCIA O NEXO CAUSAL CONTRA LA PARTE COMPARECIENTE.**

**SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR CONTROVERSIAS DE HECHOS QUE NO EXISTEN.**

**TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A INCLUIR DETERMINACIONES DE HECHOS SOBRE LOS QUE NO EXISTE GENUINA CONTROVERSIA.**

El 18 de marzo de 2024, compareció la Recurrida mediante "**Oposición a Recursos de *Certiorari***".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR ___ (2023); 2023 TSPR 103. Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente

del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 7. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 7.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que **ninguna de las partes en un**

**pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición**. Así que, según lo expresa el propio tribunal, "**la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión**". Íd., pág. 54 (énfasis suplido).

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

Atinente a la controversia que nos ocupa, procede la resolución sumaria por insuficiencia de la prueba cuando, al concluir un descubrimiento de prueba, se desprende que la prueba que existe es insuficiente o inadecuada para sostener las alegaciones de la demanda y los elementos esenciales de la reclamación, por lo que corresponde desestimarla. Rodríguez Méndez *et al.* v. Laser Eye, 195 DPR 769, 787 (2016).

En tal caso, el promovente debe demostrar que: (1) la vista es innecesaria; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial de su causa de acción; y (3) como cuestión de derecho, procede la desestimación de la reclamación. Para disponer de una solicitud bajo esta modalidad, es indispensable que la parte promovida haya tenido oportunidad amplia para efectuar un descubrimiento de prueba adecuado. Ramos Pérez v. Univisión, 178 DPR 200, 217-218 (2010).

Ahora bien, para derrotar una moción de sentencia sumaria bajo la modalidad de insuficiencia de la prueba, la parte promovida puede presentar: (a) prueba admisible en evidencia; (b) prueba que pudiera ser admisible, aunque al momento no lo sea; (c) prueba que demuestre que existe evidencia para probar los elementos esenciales de su caso; o (d) señale que hay prueba en el récord que pudiera ser admisible y derrotaría la contención de insuficiencia. A su vez, la parte promovida puede demostrar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o que, por su naturaleza, se trata de un caso en el que no es conveniente que se resuelva por el mecanismo de la sentencia sumaria. Medina v. M.S. & D. Química P.R., Inc., 135 DPR 716, 734 (1994).

Esta normativa está cimentada en que el demandante tiene que probar su teoría y si no cuenta con prueba luego de culminar el descubrimiento de prueba, no se justifica llegar a etapa de juicio. Por ende, ante una moción de sentencia sumaria bajo la modalidad de insuficiencia de prueba, la parte promovida tiene que presentar su oposición de manera fundamentada. García Rivera *et al.* v. Enríquez, 153 DPR 323, 340 (2001); Ramos Pérez v. Univisión, *supra*, pág. 219.

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos

presentados en el foro apelado. Vera v. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Vera v. Dr. Bravo, *supra*, págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219; Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**[1]

El Artículo 1802 del Código Civil de 1930 dispone, en su parte pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1815 del Código Civil de 2020 dispone que: "La responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. Si unos actos u omisiones ocurrieron antes de la vigencia de este Código y otros ocurrieron después, la responsabilidad se rige por la legislación anterior". 31 LPRA sec. 11720. Por tanto, para propósitos de adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. Torres Trumbull v. Pesquera, 97 DPR 338, 343-344 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Airport Catering Services, y otros, 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima o eficiente del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982).

Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. Siguiendo esta tónica, en caso de concurrencia de causas, el Tribunal Supremo ha resuelto que la cuestión a dilucidar es cuál de las causas fue la eficiente. Es decir, hay que estimar como decisiva la que por sus circunstancias determina el daño. Valle v. Amer. Inter. Ins. Co., 108 DPR 692, 697 (1979).

**C.**

En lo referente a los casos de caídas en establecimientos comerciales, la jurisprudencia del Tribunal Supremo ha sido contundente al establecer que:

> No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinen el mismo no sufran ningún daño; en otras palabras, **corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro**. Cotto Guadalupe v. C.M. Ins., 116 DPR 644, 650 (1985) (énfasis suplido).

No obstante, el dueño del establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección". Íd. Por ello, es imprescindible que el promovente de la causa de acción pruebe que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para él". Íd. Así pues, la responsabilidad de los dueños de establecimientos comerciales se circunscribe a determinar la existencia de condiciones peligrosas y si las mismas eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos. Colón y otros v. K-Mart y otros, 154 DPR 510, 519 (2001).

Así pues, se desprende que, bajo este tipo de situaciones, el propietario o dueño tiene el deber de mantener el área a la que tienen acceso sus clientes como un sitio seguro. Goose v. Hilton Hotels, 79 DPR 523, 528 (1956). Para poder prevalecer en su causa de acción, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que la misma era conocida por el demandado o que debió conocerla. Admor. F.S.E. v. Almacén Román Rosa, 151 DPR 711, 725 (2000); Colón y otros v. K-Mart y otros, *supra*, pág. 519.

Dicho deber de cuidado incluye tanto la obligación de anticipar el riesgo, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. En cuanto al deber de anticipar un riesgo, el Tribunal Supremo de Puerto Rico ha señalado lo siguiente:

> [La regla de anticipar el riesgo no se limita a que el riesgo o las consecuencias exactas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinadas clases [...]. Ginés v. A.A.A., 86 DPR 518, 524 (1962).

> El deber de previsión se extiende a aquel peligro que llevaría a una persona prudente y razonable a anticiparlo. Hernández v. La Capital, 81 DPR 1031, 1038 (1960).

> [L]a negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Dicho de otro modo, "un daño no genera una causa de acción por negligencia, si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable." Herminio Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, Publicaciones JTS, 1989,

pág. 185; Miranda v. ELA, 137 DPR 700, 1994; Ocasio Juarbe v. Eastern Airlines, 125 DPR 410 (1990); Jiménez v. Pelegrina Espinet, 112 DPR 700, 705-706; Salvá Matos v. A. Díaz Construction Corp., 95 DPR 902, 906-908, (1968).

Reiteradamente, la jurisprudencia ha reconocido la falta de previsión como base para la responsabilidad civil extracontractual. En Santiago Colón v. Supermercados Grande, 166 DPR 796 (2006), el Tribunal Supremo reiteró lo siguiente:

> Habida cuenta de lo anterior, la norma en estos casos establece que si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer -- como haría un hombre prudente y razonable -- aquel grado de cuidado, diligencia, vigilancia, y precaución que las circunstancias le exigen y el daño causado se debió a dicho deber omitido cabrá imponer responsabilidad al causante.

> Entre los deberes de actuar se encuentra el de cuidado. Este deber incluye, "tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase."

> Para poder determinar lo que constituye un daño razonablemente previsible debemos acudir a la conocida figura del hombre prudente y razonable según definida en nuestra jurisprudencia. Elba A.B.M. v. U.P.R., ante; Ortiz v. Levitt & Sons, 101 DPR 290 (1973). Como resultado de lo anterior, en el pasado hemos resuelto que "el deber de previsión no se extiende a todo peligro inimaginable que concebiblemente pueda amenazar la seguridad sino aquél que llevaría a una persona prudente a anticiparlo. Íd., pág. 808.

**III.**

Los señalamientos de error esgrimidos en ambos recursos están íntimamente relacionados, por lo tanto, se abordarán de forma conjunta en la discusión. En síntesis, los Peticionarios plantean que el TPI erró: (1) al declarar "No Ha Lugar" la solicitud de sentencia sumaria por insuficiencia de la prueba, a pesar de que la Recurrida admitió que la causa de la caída en la que basa su "**Demanda**" se debió a que al saludar a una amiga perdió el balance, (2) al determinar controversias de hechos que no existen y (3) al negarse a incluir determinaciones de hechos sobre los que no existe genuina controversia.

Por su parte, la señora Otero Santana arguye que no procede la disposición sumaria del caso, puesto que la causa eficiente de la caída lo fue la pronunciada pendiente de la rampa, el deterioro de su superficie y el

estar desprovista de pasamanos. Sostiene, además, que existen hechos materiales que están en controversia que requieren que sean dirimidos en un juicio. Igualmente, sostiene que el TPI no erró al efectuar sus determinaciones de hechos que sí están en controversia que motivaron la denegatoria de la *Moción en Solicitud de Sentencia Sumaria*. Veamos.

Al analizar los planteamientos de derecho que los Peticionarios esbozaron en su recurso, observamos que ninguno busca cuestionar los hechos que el foro primario estableció como incontrovertidos en la *Resolución* recurrida. Entiéndase, las controversias que venimos compelidos a adjudicar están cimentadas en determinar si, a esta etapa de los procedimientos, procede desestimar la "**Demanda**" en contra de los Peticionarios por insuficiencia de la prueba con la que cuenta la Recurrida para probar su causa de acción. Asimismo, MSJ y Óptima sostienen que el TPI incidió al no incorporar los siguientes hechos como incontrovertidos, a saber: (1) la demandante no tiene otro testigo que no sea ella misma. Es decir, no existe prueba testifical adicional a su testimonio; (2) la demandante admite en su deposición que no recuerda absolutamente nada sobre la caída a base de la cual reclama en este caso; (3) la demandante no vio limo en el área de la rampa el día de su alegada caída; y (4) la foto que la demandante proveyó del lugar de la caída la tomó un año después del accidente y no fue tomada por la demandante.

Por su parte, Bermúdez Investment alega que el TPI debió incluir los siguientes hechos como incontrovertidos: (1) la parte demandante no tomó fotos ni videos de la alegada caída o el área donde alegadamente ocurrieron los hechos la noche del 7 de marzo de 2021 ni en ningún otro momento; (2) la parte demandante no vio con qué se resbaló; y (3) la demandante no ha regresado al lugar de los hechos después del 7 de marzo de 2021.

Conforme hemos adelantado, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos presentados ante el foro de instancia. Del análisis *de novo* de la prueba que se presentó

ante el TPI, se desprende que, en efecto, existe prueba para sustentar las determinaciones de hechos adicionales núms. 2 y 3 señaladas por MSJ y Óptima. Lo anterior surge específicamente del testimonio, bajo juramento, vertido por la señora Otero Santana durante su deposición, a saber:

[…]

R Yo salí y cuando, cuando iba bajando la rampa para ir al banquito donde uno se sienta a fumar ahí, me caí. Yo lo que yo recuerdo es poco porque no re… O sea, yo salí, empecé a bajar y uno siente cuando uno siente que se va a caer y uno trata de no caerse, y el último recuerdo mío es que no pude incorporarme y perdonando el francés, pero dije me jodí, me voy a caer. Y no me acuerdo de nada. **Yo pensé que con el tiempo yo iba a tener recuerdos, pero no recuerdo absolutamente nada.** (énfasis suplido).[2]

[…]

P Mire, pero cuando usted…
R Y eso era el limo.
P ¿Cómo usted sabe que es limo?
R Pues la cosa esa negra como…
**P ¿Pero usted lo vio cuando se cayó?**
**R No.**
P No. ¿Lo vio al llegar? Cuando usted subió usted dice…
R No, no, no.
P …que esa es la única entrada.
R Si hubiera sabido…
P Pero usted dice…
R …por qué me hubiera bajado por ahí pa' caerme.
**P Pero usted dice que esa es la única entrada. ¿Usted vio esa cosa negra…**
**R No.**
P …en los escalones…
R No.[3] (énfasis suplido.)

[…]

Así pues, dado a que las expresiones anteriores fueron realizadas bajo juramento, por parte de la propia Recurrida, concluimos que procedía que se incorporaran como hechos incontrovertidos. A la luz de lo anterior, acogemos las siguientes determinaciones de hechos como incontrovertidas, dentro del contexto de la *Moción en Solicitud de Sentencia Sumaria* que nos ocupa:

(1) La demandante admite en la deposición que no recuerda absolutamente nada sobre la caída a base de la cual reclama en este caso.

(2) La demandante no vio limo en el área de la rampa el día de su alegada caída.

---

[2] *Véase*, Apéndice del recurso de *certiorari*, caso núm. KLCE202400264, págs. 129-130.
[3] Íd., págs. 145-146.

En lo que respecta a la toma de la fotografía, si bien se menciona en la *Moción en Solicitud de Sentencia Sumaria,* al revisar la prueba documental se observa que no se sustenta la alegación de que la foto haya sido tomada un año después del accidente. Más bien, la Recurrida expresó que la foto fue tomada "entre el accidente y un año".[4] Es decir, que fue tomada en algún momento dentro del transcurso de ese año desde que ocurrió la caída. Por tal razón, existe controversia real acerca del momento en que la foto fue tomada y, por tanto, no podemos acoger el hecho propuesto por MSJ y Óptima.

Con respecto al restante de los hechos que los Peticionarios sostienen que debieron ser acogidos por el TPI en su *Resolución* como incontrovertidos, no hemos encontrado prueba documental que así lo sustente. Tan es así que al examinar la *Moción en Solicitud de Sentencia Sumaria* notamos que dichos hechos no fueron si quiera propuestos por los Peticionarios. Por tanto, no se aportó evidencia documental que pudiera establecer los mismos.

Habiendo concluido lo anterior, cabe señalar que el hecho de que la señora Otero Santana no pueda recordar cómo ocurrió la caída o si existía presencia de limo en la rampa, no descarta totalmente la posibilidad de que los Peticionarios hayan contribuido a la misma y tampoco los exime necesariamente de la alegada responsabilidad que ella les atribuye. Más aún cuando del expediente del caso se desprende que el TPI recibirá prueba pericial en el presente caso. Es decir, que no aparenta ser que no sólo se presentará el testimonio de la Recurrida, sino que también el desfile de la evidencia contará con prueba de un presunto experto que brindará su opinión sobre la cuestión última que el foro primario vendrá obligado a adjudicar.

Además, el análisis de la prueba documental aportada por los Peticionarios apunta a que no estamos ante un caso de insuficiencia de la prueba. Fíjese que para que la señora Otero Santana pruebe la causa de acción en contra de Bermúdez Investment, el TPI tiene que recibir prueba

---

[4] Íd., pág. 156.

de que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que la misma era conocida por el demandado o que debió conocerla. Admor. F.S.E. v. Almacén Román Rosa, *supra*, pág. 725; Colón y otros v. K-Mart y otros, *supra*, pág. 519. En lo que respecta a la causa de acción en contra de MSJ y Óptima, la Recurrida tiene el peso de aportar prueba que establezca que alguno de dichos Peticionarios cometió un acto culposo o negligente, que existe una la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) que se le causó un daño real. Nieves Díaz v. González Massas, *supra*, pág. 843.

Analizada la prueba documental que obra en el expediente desde el ejercicio *de novo* que venimos compelidos a efectuar, acogemos como nuestros los hechos materiales incontrovertidos, según fueron incorporados por el TPI en la *Resolución* recurrida, y añadimos los dos (2) hechos que, a nuestro juicio, sí fueron establecidos por la prueba documental aportada por los Peticionarios y que el foro *a quo* descartó. Por tanto, para propósitos del cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, detallamos los hechos esenciales y pertinentes sobre los que no existe controversia:

1. El 6 de marzo de 2020, Olga Otero acudió a su trabajo en el Condominio Bristol como administradora.

2. El 6 de marzo de 2020, Olga Otero salió del trabajo a su casa a las 5:30 p.m.

3. El 7 de marzo de 2020 ocurrió la alegada caída objeto del caso.

4. El 7 de marzo de 2020, al momento de salir a fumar fuera del negocio de W Tacos, Olga Otero estaba en compañía de una mujer.

5. El 7 de marzo de 2020, al momento de salir a fumar fuera del negocio de W Tacos, Olga Otero estaba conversando con esta mujer, a quien se identifica por el nombre de Flavia.

6. En la madrugada del 7 de marzo de 2020 había llovido.

7. El día del alegado incidente, Olga Otero calzaba unas plataformas negras de tres pulgadas y media de alto.

8. Al momento de la caída, Olga Otero no llamó al servicio de 911.

9. Al momento de la caída, Olga Otero no notificó a nadie en el negocio W Tacos.

10. Luego de la caída, Olga Otero fue a su casa.

11. El 8 de marzo de 2020 a las 8:55pm, Olga Otero fue a la Sala de Emergencias del Hospital Pavía de Hato Rey.

12. El 8 de marzo de 2020, Olga Otero reportó que la razón por la cual acudió ese día a la Sala de Emergencia fue por "un falling injury since days ago.

13. Olga Otero admitió en su deposición que le brindó toda la información del incidente objeto de esta demanda al personal del Hospital Pavía en sala de emergencias el 8 de marzo de 2020, al llenar todos los documentos.

14. Olga Otero admitió que la información provista al Hospital Pavía estaba correcta.

15. Del expediente médico surge que, para el 8 de marzo de 2023, Olga Otero no tomaba nada para el dolor.

16. Olga Otero admitió que llenó a mano la página 22 del récord médico, específicamente la hoja de accidente del Hospital Pavía en Hato Rey, y que el día del incidente objeto de la Demanda de autos, esta "estaba caminando con unos zapatos de plataforma, una amiga me saludó…se recostó de mí y perdí el balance".

17. Olga Otero no dejó de trabajar después de la caída.

18. Olga Otero le notificó a W Tacos sobre la alegada caída un año después.

19. Bermúdez Investment adquirió el edificio en la Calle Fernando Montilla #400 en San Juan el 15 de junio de 1993.

20. Bermúdez Investment le arrendó a W Tacos un espacio comercial en la primera planta del edificio en la Calle Fernando Montilla.

21. Carlos Manuel Bermúdez, presidente de Bermúdez Investment declaró que W Tacos, como inquilino, tenía la responsabilidad de mantener la rampa.

22. Para la fecha del accidente de Olga Otero, Bermúdez Investment no tenía un seguro de responsabilidad pública sobre el inmueble donde ocurrió el accidente.

23. La única manera para acceder a W Tacos es mediante la rampa y unos escalones en el lado opuesto de dicha rampa.

24. Según el Informe Pericial del agrimensor Luis Sousa Gallardo, la rampa:

Mide un metro cincuenta y seis (1.56mts) de ancho, Paralela y frente de la estructura de hormigón existente. Se puede apreciar que la diferencia de nivel entre la acera y el piso del local es de treinta y cuatro centímetros (34cms) equivalente a '1'3/8.

25. Según el Informe Pericial. "[l]a rampa no está dentro de la propiedad, está dentro del dominio público".

26. Del Informe Pericial del agrimensor Luis Sousa Gallardo, se concluyó que:

Luego de un análisis de las escrituras de compraventa, el plano de inscripción, la mensura realizada y la situación actual del área, podemos determinar que a pesar de que el único uso de la rampa de acceso de la colindancia norte es servir al edificio enclavado en el solar, la misma se encuentra construida en el área de la acera peatonal sur de la calle Comercio.

27. Según la evaluación por el médico Rolando Colón Nebot con fecha del 18 de marzo de 2022, Olga Otero tiene un "impedimento de 38% de la extremidad inferior, (Class 3, Grade C, 38% de la extremidad inferior), se convierte a 15% de impedimento parcial permanente del cuerpo total (WBI 15%, Class 3, Grade C) del cuerpo total)."

28. Según la opinión médica del médico José Suárez Castro, al tomar en cuenta la "6th ed Guides for Determination of Permament Impairment" el impedimento de Olga Otero representa "a 60% lower extremity impairment that converts to a 24% whole person impairment [...]."

29. La demandante admite en la deposición que no recuerda absolutamente nada sobre la caída en la que fundamenta su causa de acción.

30. La demandante no vio limo en el área de la rampa el día de su alegada caída.

Surge del expediente ante nuestra consideración que, el 7 de marzo de 2020, la señora Otero Santana visitó el negocio W Tacos junto a su primo. Esta calzaba unas plataformas negras de tres pulgadas y medias de alto. En horas de la madrugada, decidió fumar fuera de dicho establecimiento comercial en compañía de una mujer llamada Flavia. Así las cosas, la señora Otero Santana sufrió una caída al descender por la rampa del negocio ubicada fuera del establecimiento. Al día siguiente, luego de culminar su jornada laboral, acudió a sala de emergencia del Hospital

Pavía de Hato Rey. A causa de este incidente, la Recurrida presentó una "**Demanda**" contra los Peticionarios y les solicitó la indemnización de los daños y perjuicios sufridos.

Es norma claramente establecida en nuestro ordenamiento jurídico que procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 7. La resolución sumaria también es factible si al concluir el descubrimiento de prueba, se constata que la prueba que existe es insuficiente o inapropiada para respaldar las alegaciones presentadas en la demanda y los elementos esenciales de la reclamación. Rodríguez Méndez et al. v. Laser Eye, *supra*, pág. 787**. Así pues, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia**. Oriental Bank v. Caballero García, *supra*, pág. 7. **Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos**. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Por otra parte, aquel que por acción u omisión genere daño a otro debido a su negligencia o culpa, está compelido a reparar los perjuicios ocasionados. 31 LPRA sec. 5141. La culpa o negligencia se caracteriza por la ausencia del cuidado adecuado, que se traduce en la omisión de anticipar y prever las consecuencias razonables de un acto. Nieves Díaz v. González Massas, *supra*, pág. 844. Así pues, la compensación por daños y perjuicios procede únicamente cuando se demuestra una conducta negligente o culposa, la relación causal entre dicha conducta y el daño efectivamente sufrido por quien reclama. Íd. pág. 843.

Luego de analizar minuciosamente los documentos que obran en el expediente, incluyendo la *Moción en Solicitud de Sentencia Sumaria*, su *Oposición*, la *Réplica*, la *Dúplica* y la deposición realizada a la señora Otero Santana, reconocemos que existe controversia respecto a los siguientes

hechos materiales y sustanciales que impiden resolver este caso sumariamente. En específico, concordamos con la afirmación del TPI de que carecemos de prueba que aclare si la caída se debió a diversos elementos, tales como:

> (1) la inclinación de la rampa;
>
> (2) la falta de mantenimiento de la rampa por parte de los Peticionarios o de alguno de los codemandados acumulados al pleito;
>
> (3) si el accidente se debió a la pérdida de balance de la Recurrida cuando se dispuso a saludar a una amiga; o
>
> (4) si el accidente se debió a que la rampa incumple con los códigos de construcción de Puerto Rico.

De igual manera, tras efectuar nuestro análisis del expediente en unión con la prueba, concluimos que tampoco disponemos de prueba que indique si la rampa carecía de pasamanos a la fecha del accidente o quién construyó la misma y si dicha construcción se dio con el conocimiento del MSJ y Óptima y/o de Bermúdez Investment. Entiéndase, bajo estas particularidades, no podemos colegir irrefutablemente que no existía una condición peligrosa en el establecimiento en donde ocurrieron los hechos, si se le puede atribuir conocimiento al dueño del negocio o si hubo algún tipo de negligencia desplegada por alguno de los Peticionarios que desembocara en la ocurrencia de los daños alegados en la "**Demanda**". **Nótese que todas estas circunstancias son materiales a la determinación de daños y perjuicios que viene obligado el TPI a efectuar. Los aquí Peticionarios son el presunto dueño del edificio en donde alegadamente ocurrió la caída y el MSJ se alega es el titular de la acera en donde se construyó la rampa en controversia. No estamos ante un escenario en el que tenemos a nuestra disposición todos los hechos necesarios para resolver la controversia**, **pues existen hechos fundamentales controvertidos**.

En otras palabras, no contamos con evidencia que nos demuestre cuál fue la causa próxima de la caída y si ésta se atribuye a la negligencia de los Peticionarios o de la Recurrida o si existe concurrencia de negligencia de las partes que requiera una determinación de cuál de todas las causas presentes fue la más eficiente a la ocurrencia del daño. La deposición realizada a la señora Otero Santana, por sí sola, no constituye prueba suficiente para resolver sumariamente el caso, ya que no provee las respuestas a todos los hechos medulares del caso que son necesarios para establecer todos los elementos de la causa de acción incoada en la "**Demanda**". Esto es, el referido testimonio, bajo juramento, no establece de manera concluyente que no existe una conexión directa entre el presunto daño causado por la caída y la conducta de los Peticionarios.

En suma, somos de la opinión de que éste es el típico caso en el que no es aconsejable disponer por la vía sumaria. Más aún cuando el Tribunal Supremo ha establecido que en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, la utilización del mecanismo sumario no es el vehículo idóneo para disponer del caso. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219. Así pues, no se equivocó el TPI al declarar "No Ha Lugar" la *Moción en Solicitud de Sentencia Sumaria* y al considerar que existen controversia sobre hechos materiales. Procede que dichas controversias se diluciden en un juicio plenario.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, expedimos los autos de *certiorari* solicitados y *modificamos* la *Resolución* recurrida, a los fines de añadir las siguientes determinaciones de hechos incontrovertidos: (1) la demandante admite que en la deposición que no recuerda absolutamente nada sobre la caída en la que fundamenta su caso, y (2) la demandante no vio limo en el área de la rampa el día de su alegada caída. Así modificada, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones